11th
Court of Appeals

                                                                  Eastland,
Texas

                                                             Memorandum
Opinion

 

Jeffrey C. Denson

Appellant

Vs.                   No.
11-02-00083-CV B Appeal from Taylor County

Melissa Denson

Appellee

 

The only
issue in this case is whether the trial court abused its discretion by ordering
that, when the children of the marriage were spending the night with their
father pursuant to the father=s Aovernight possessions with the children,@ the father=s male roommate, named in the judgment, Ashall not be present between the hours of 8 p.m. and 8 a.m.@  The
father appeals.  We hold that the trial
court did not abuse its discretion.  We
affirm.

The court
entered a final divorce decree on March 5, 2001, dissolving the marriage
between Melissa Denson and Jeffrey C. Denson. 
The parties had two children, a 9-year-old son, K.D., and a 4-year-old
daughter, S.D.  Melissa Denson was
appointed managing conservator, and Jeffrey Denson was appointed possessory
conservator.  Melissa Denson filed a
motion for new trial on the issue of visitation which the court granted after a
hearing.  On June 12, 2001, the parties
agreed to temporary orders regarding visitation, including a provision that,
during the father=s
visitation, the father=s
roommate Ashall not be present.@

On January
9, 2002, the court heard evidence regarding the issue of visitation.  Following the hearing, the court entered its
final divorce decree on February 11, 2002, which provided that, during the
father=s overnight possessions with the children,
the father=s roommate Ashall not be present between the hours of 8 p.m. and 8 a.m.@








At the
hearing on the motion for new trial, Melissa Denson testified that, after the
divorce hearing, her 4-year-old daughter, S.D., began showing disturbing
behavior following visits with her father. 
The mother took S.D. to a therapist, Frances Wiman, who testified that
the child=s statements to her caused Wiman to contact
Children=s Protective Services.  S.D. detailed allegations which the
therapist viewed as possible sexual abuse by the roommate.  The child also reported watching a Anasty@ movie with the roommate and detailed the contents of the movie.  The therapist stated that she did not doubt
the allegations because she had Anever known a small child to make up a story with such detail.@  The
Abilene Police Department concluded that the report of possible sexual abuse
was unfounded, and the Children=s Protective Services concluded that there was not enough information
to substantiate the allegation.  In
determining the best interest of the children, the court could consider the
evidence the court heard at the motion for new trial.  Holley v. Holley, 864 S.W.2d 703, 706 (Tex.App. - Houston [1st
Dist.] 1993, writ den=d).

The record
clearly shows that there was a marked difference in the behavior of both of the
children after the temporary orders were entered requiring that the father=s roommate not be present when the children
visited the father.  The mother testified
that her son refused to visit the father when the roommate was present; but,
after the temporary orders were entered, the son voluntarily visited his
father, and there were no problems when the children returned home.  After the temporary orders, the children
improved, and the mother discontinued the therapy for her young daughter.

Sandy
Grisham, Director of Pioneer Drive Child Development Center, observed the two
children at the center.  Grisham
described the difference in S.D.=s behavior before the parties= June 2001 agreement.  Her
testimony shows that, before the orders were entered, S.D. would be very
angry.  She would claw and bite, and she
would run from the teachers.  Grisham
stated that, in the last half of 2001, S.D. had been very calm, very loving,
just an average little 5-year-old girl. 
Grisham was not aware that the father=s roommate had not been around S.D. since June of 2001.

David
Atkins, a detective with the Abilene Police Department, testified that he
conducted an investigation of the allegations regarding sexual abuse of
S.D.  The officer stated that he
concluded that the allegations were Aunfounded.@

Sherrel
Matthews, Program Director for the Texas Department of Protective and
Regulatory Services, testified that she conducted an investigation regarding
K.D. and S.D. and that she concluded that Athere was not enough information to substantiate the allegation.@








Ann Poole,
S.D.=s teacher at Pioneer Drive Child Development
Center, testified that S.D. had some problems in the first part of 2001.  She described the problems as running away,
biting, pinching, and scratching.  Poole
noticed a difference in S.D.=s behavior in the three months before the hearing.  Poole stated that S.D. seemed to mature and
grow up.

Jeffrey
Denson, the father of the children, stated that, prior to the June agreement,
his son, K.D., would not visit with him. 
Jeffrey Denson stated that, for the six-month period prior to the
hearing in January 2002, visitation had been fine.  The father also stated that his visits with S.D. had improved the
last six months.  Jeffrey Denson
testified that he saw no correlation between his roommate=s absence and the improvement of his
visitation with his children.

The father=s roommate testified that he had not seen the
children in the last six months.  He
stated that he had a problem with not being present when the children were
visiting their father because, if he was on call from his employer, it created
a hardship and he had no place to stay if he could not be at home.  The roommate denied that he had ever taken
any inappropriate actions or did anything inappropriate around S.D.

TEX. FAM.
CODE ANN. ' 153.002 (Vernon 2002) provides that the best
interest of the child shall always be the primary consideration of the court in
determining the issues of conservatorship and possession of and access to a
child.  TEX. FAM. CODE ANN. ' 153.193 (Vernon 2002) provides that the
terms of an order that imposes restrictions or limitations on a parent=s right to possession of or access to a child
may not exceed those that are required to protect the best interest of the
child.

In its
findings of fact, the trial court found that the children=s visitation with their father during the
pendency of the divorce improved under the court=s requirement that the father=s roommate be absent during the time of the father=s possession of the children.  In the conclusions of law, the court
concluded that it was in the children=s best interest that the father=s roommate not be present during the father=s overnight possession periods with the
children.

The trial
court is given wide latitude in determining the best interest of a minor
child.  The judgment of the trial court
will be reversed only when it appears from the record as a whole that the court
has abused its discretion.  Gillespie v.
Gillespie, 644 S.W.2d 449, 451 (Tex.1982). 
We hold that the court did not abuse its discretion.  E.C. ex rel. Gonzales v. Graydon, 28 S.W.3d
825 (Tex.App. - Corpus Christi 2000, no pet=n).

The
judgment of the trial court is affirmed.

 

AUSTIN
McCLOUD

SENIOR
JUSTICE

 

April 3, 2003

Panel consists of: Arnot, C.J., and

Wright, J., and McCloud, S.J.[1]











[1]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.